**David WATERS, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 02S00–9607–CR–478.**

Supreme Court of Indiana.

Aug. 21, 1997.

Jeffrey G. Raff, Deputy Public Defender, Fort Wayne, for Defendant–Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

DICKSON, Justice.

The defendant-appellant, David Waters, presents one issue for this Court: Whether the evidence presented at trial was sufficient to support his conviction for murder.[1] An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences supporting the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State,* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Summarizing the evidence supporting the judgment, we find that the defendant owed money to the victim, Gregory "Shahean" Hunter. On September 19, 1995, the victim and a friend, Kerry "Goldie" Davis, went to the apartment where the defendant lived to recover the money. The defendant told the two men that he did not have the money with him, but he could get it from his father's house. The defendant, the victim, and Goldie went to the apartment of another friend, Roderick "Boo" Gentry, who agreed to drive the men to the defendant's father's house.

Upon arriving at his father's house, the defendant went inside and quickly came back out, asking the victim to come into the house. Once inside the residence, the defendant took a handgun that his father kept under a pillow and shot the victim several times. The first three shots, while not fatal, would have debilitated the victim. He was shot in the leg and shoulder—the shots breaking bones in both places—and in the arm. The final and fatal shot to the victim's head was fired at close range shortly after the first shots. The defendant's twenty-year-old brother, who was also in the house during the shooting, testified that he heard the first shot, came into the room, and saw the victim lying on the ground holding his leg and stating "I have a [baby]." Record at 331. He went into the bathroom and then heard the fatal shot.

After the shooting, the defendant's father took the gun, threw the shells in the trash, and both he and the defendant told police that the father had fired the shots, claiming the victim had threatened him. However, the evidence collected at the scene did not support this version of the story. When confronted again, the defendant's father admitted that he was covering up for his son and that his son had actually done the shooting.

The defendant confessed, but claimed that he was acting in self-defense, as he had been kidnaped at gunpoint and feared for his life. This was disputed by the person who drove the men to the defendant's father's house, Boo, and the defendant's father, who testified that the victim had no gun and that there had been no arguments prior to the shooting.

The defendant argues that "he was justified in using deadly force because he reasonably believed his life was in danger." Brief of Appellant at 4. In the alternative, the defendant argues that he "should be convicted of the offense of Voluntary Manslaughter." *Id.* at 5. We note that the jury received instructions on both self-defense and the lesser-included offense of voluntary manslaughter, but convicted the defendant of murder. Considering the probative evidence and reasonable inferences supporting the judgment, and without weighing evidence or assessing witness credibility, we conclude that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.

---

1. IND.CODE § 35–42–1–1 (1993).